GEORGE BETTS ET AL. V. F. L. SIMS.

[FILED DECEMBER 16, 1892.]

1. **Real Estate:** PAYMENT OF MORTGAGE BY PURCHASER:
FAILURE OF TITLE: SUBROGATION. A purchaser of real estate
who has paid off a prior mortgage thereon in the belief that he
was the owner of the property purchased, will, on a failure of
his title, be subrogated to the rights of the mortgagee as against
the mortgagor and others who are in equity liable for the mort-
gage debt.

2. ———: ———: ———. In an action by the plaintiffs, husband
and wife, to quiet the title to their homestead against the de-
fendant who claimed title through a conveyance executed by the
husband alone, it was disclosed that B., who held title through
the deed mentioned, at the request of plaintiffs, mortgaged the
premises to a third party, and with the proceeds thereof paid
and satisfied two prior mortgages thereon executed by both
plaintiffs; and that the defendant, who held by certain *mesne*
conveyances from B., believing himself to be the owner, paid off
the mortgage executed by the latter. *Held,* That defendant
should be subrogated to the rights of the several mortgagees.
and is entitled to a decree of foreclosure in the action to quiet
title.

3. ———: CONVEYANCE OF HOMESTEAD: PURCHASE OF APPAR-
ENT TITLE AT REQUEST OF REAL OWNERS: RIGHT OF PUR-
CHASER TO RECOVER PURCHASE MONEY: SET-OFF. Plaintiffs,
husband and wife, induced P., defendant's grantor, to purchase
real estate from B., who held the apparent title thereto, for their
benefit, and at their request, agreeing to purchase a part thereof
from him at the price paid B., as soon as they could raise the
necessary funds. P. accordingly purchased the property from
B. for $1,000 in money and assumed a prior mortgage thereon
amounting to $1,150, for which plaintiffs were liable. Plaintiffs
subsequently brought an action to quiet their title to the same
property against the defendant on the ground that it was their
homestead, and a conveyance through which both B. and P.
must trace title was executed by the husband only. *Held,* On
the facts found, that the $1,000 paid by P. for the land should
in equity be treated as an advancement by him for the benefit
of plaintiffs, and that defendant, P.'s assignee, was entitled to
offset that amount, with interest, against the claim of plaintiffs
for rents and waste.

ERROR to the district court for Saline county. Tried below before MORRIS, J.

*Hall, McCulloch & English,* for plaintiffs in error.

*Robert Ryan, contra.*

POST, J.

This controversy had its inception in an action by the plaintiffs in error in the district court of Saline county to quiet their title to the property in controversy, to-wit, a quarter section of land in said county, as against the defendants in error. They alleged in their petition that the defendants claimed title through a deed from George Betts, which was void and insufficient to pass any title whatever, for the reason that said property was at the time in question the homestead of the said George Betts and his wife Eliza, who did not sign or join in the execution thereof. The defense relied upon was an estoppel as against both plaintiffs. On a final hearing the district court dismissed the petition for want of equity and entered a decree for the defendant. An appeal was taken to this court, where the decree of the district court was reversed and judgment entered here for plaintiffs in accordance with the prayer of the petition. (See *Betts v. Sims,* 25 Neb., 166.) The facts involved in that controversy, so far as they are material to this, are fully stated in the opinion cited above. Subsequently the defendant in error made application to this court for a modification of the decree against him so as to allow him to be subrogated to the rights of Charles Bidleman, who held a mortgage on the property in controversy, and which he, defendant, had paid in full while in good faith, relying upon his title through the aforesaid deed from George Betts. Said application was granted, but it appearing that an accounting would be necessary in order to fully determine the rights of the parties with respect to

said claim, the case was remanded to the district court for hearing upon amended pleadings. It is not deemed necessary to make an extended reference to the pleadings, as the findings and decree of the district court, which are set out below, are responsive to all the issues presented, and plainly indicate the contentions of the parties at the hearing. The findings and decree are as follows:

"And now on this 24th day of November, 1890, the same being a portion of the October term of this court, this cause came on to be decided upon the submission heretofore had of said cause, and the court, being now fully advised in the premises, finds that the findings of fact heretofore made by this court are, and each of them is, fully sustained by the evidence submitted upon this hearing. This court further finds that the defendant F. L. Sims, believing in good faith that he was the owner at the time of the southeast quarter (S. E. ¼) of section eight (8), in township eight (8) north, range one (1) east, sixth (6) principal meridian, did, on the 4th day of March, 1883, pay off the amount due on a certain mortgage made on said premises by Joseph Brown to Charles Bidleman of date September 1, 1880, which said mortgage was duly filed for record in the office of the county clerk of Saline county, Nebraska, on September 24, 1880, and duly recorded in Mortgage Record No. 11, on pages 388 and 389 of said office. That said mortgage was made with the knowledge and assent and at the request of George Betts and Eliza Betts, and the proceeds were used for their benefit, and in making said mortgage the court finds that Joseph Brown was acting as the trustee of said George Betts and Eliza Betts. * * * That the amount so paid on March 4, 1883, by F. L. Sims was eleven hundred and fifty dollars, with eight per centum per annum interest thereon from the preceding 1st day of September, which interest so paid was in amount fifty-seven dollars, and that the said F. L. Sims is entitled to be subrogated as to said

mortgage and its lien, enforcement, and remedies in respect thereto to all the rights which the said Charles Bidleman could now assert if he held said mortgage unpaid and undischarged. The court therefore finds that F. L. Sims, as to said premises above described, is entitled to the relief by him prayed, and the foreclosure of said mortgage, as though in form assigned by Charles Bidleman to said F. L. Sims, and to an order of sale, under which said premises shall be sold to pay the amount above found due, to-wit, the sum of eleven hundred and ninety-seven dollars, with interest thereon at eight per centum per annum to the present date, in all to this date the sum for which F. L. Sims is entitled to the relief as aforesaid is nineteen hundred and thirty-six $\frac{45}{100}$ dollars, to draw eight per centum interest per annum from this date. The court further finds that the said premises were conveyed by F. M. Patton to F. L. Sims with all his right, title, interest, claim that he held against George Betts and Eliza Betts and Joseph Brown as to the lands above described; that said George Betts and Eliza Betts requested, urged, and induced said F. M. Patten to purchase said premises from Joseph Brown and as part consideration to pay, and the said Patton did therefore pay, to said Brown for the use and benefit of, and upon the direction of, George Betts and Eliza Betts the sum of one thousand dollars ($1,000) cash, and assuming the mortgage to Charles Bidleman for $1,150; that said one thousand dollars was paid as aforesaid September 7, 1882, by F. M. Patton, and that as to the said sum of one thousand dollars F. L. Sims is entitled to be subrogated to the rights of his grantor, F. M. Patton, and to have computed interest thereon at the rate of seven per centum per annum, which sum of one thousand dollars and interest should be credited upon the amount found due in favor of George Betts and Eliza Betts as hereinafter stated. The court finds further that the said F. L. Sims should account for the rental value of the above premises from the time he took possession of the

same until dispossessed by the decree of the supreme court, a period of six years, at the rate of one $\frac{15}{100}$ dollars per acre per year, or in all one hundred and eighty-four dollars per year, said rent being due at the end of each year, and to draw seven per centum interest from the said times, and the said Sims should also account for the granary removed from said premises at its fair value, which the court find, to be one hundred dollars, and for the stable removed, at its fair value, which this court finds to be ten dollars, and for the value of all trees removed from said premises, twenty-two $\frac{75}{100}$ dollars, and the court, being without reliable data upon which to figure the time for which Sims should pay interest on the three items last mentioned, assumes that it should be for three years at seven per centum per annum, which amounts to twenty-seven $\frac{87}{100}$ dollars. The court further finds that the above named amounts (excluding the Bidleman mortgage) with seven per centum interest thereon should be treated as a set-off as to the one thousand dollars paid by F. M. Patton as above stated, with seven per centum interest thereon from the date of said payment, which was on September 7, 1882; that upon that basis the court finds that the said one thousand dollars, with seven per centum interest thereon from September 7, 1882, computed thereon, exceeds the total amount for which F. L. Sims should account as aforesaid, including interest thereon as above found due, but this court finds no prayer for relief in favor of F. L. Sims as to said excess on said premises nor for reimbursement for taxes paid or improvements made by Sims, and therefore finds that any relief on that score must be denied. It is therefore ordered, adjudged, and decreed by this court that F. L. Sims be entitled to be and is subrogated to the rights of Charles Bidleman as to the southeast quarter (S. E. ¼) of section eight (8), township eight (8) north, range one (1) east, sixth principal meridian, as against George Betts and Eliza Betts and all parties claiming under or through them or either of them;

that the mortgage in favor of Charles Bidleman be de-
clared in full force and virtue in favor of F. L. Sims by
subrogation from September 1, 1880; that said mortgage
be foreclosed as prayed, in favor of F. L. Sims for the
amount now due thereon, which the court finds to be nine-
teen hundred and thirty-six $\frac{45}{100}$ dollars, to draw eight per
centum per annum from this date."

The first point made in the brief of plaintiffs in error is
that the order of this court modifying the decree in their
favor did not include the so-called Patton claim; hence,
the question whether the defendant should be subrogated
to the rights of Patton with respect to money paid by the
latter to Brown, his grantor, was not involved in the sec-
ond hearing.   It is not necessary to look to the order re-
manding the case for the issues, since the question of the
defendant's right to offset the $1,000 paid by Patton to
Brown at the special instance and request of the plaintiffs
was distinctly raised by the pleadings in the supplemental
proceeding.

2. The evidence before the district court was not pre-
served, hence the only question now open for consideration
is whether the decree is warranted by the facts as found by
the court.   Of the right of the defendant to be subrogated
to the equities of Bidleman there can be no doubt.   From
the findings of the court on the first hearing, which are set
out at length in the opinion previously filed in the case,
and which the court in this proceeding finds to be true, it
appears that in the year 1876 the plaintiffs mortgaged the
land in controversy to the New England Mortgage Secur-
ity Company to secure the sum of $600, borrowed by
them, which indebtedness bore interest at the rate of ten
per cent, and in the year 1877 they mortgaged said land to
one R. S. Bentley to secure the sum of $500, borrowed by
them, which indebtedness bore interest at the rate of
twelve per cent.   Both plaintiffs signed and acknowledged
the said mortgages.   In the year 1880 plaintiffs procured

said Bentley, to whom the land had in the meantime been
deeded as security, for the $500 loan, together with other
money advanced by him, to convey said land to Joseph
Brown, who assumed said mortgages as part of the consid-
eration therefor. Brown, after the conveyance to him,
mortgaged the premises to Bidleman for $1,150, with the
proceeds of which he paid off and satisfied the two mort-
gages executed by plaintiffs. The defendant, who subse-
quently purchased from Patton, Brown's grantee, paid in
full and caused to be satisfied of record the mortgage to
Bidleman. Plaintiffs having invoked the equitable powers
of the court must, as a condition to relief, discharge the
obligation which in equity they owe to the defendant.
"The rights of subrogation," says Chancellor Kent, "is
founded upon natural justice and is recognized in every
cultivated system of jurisprudence." (*Cheesbrough v. Mil-
lard*, 1 Johns. Ch. [N. Y.], 412.) The court, therefore, did
not err in awarding a decree of foreclosure for the amount
of the Bidleman mortgage and interest thereon.

3. It is urged finally that the defendant was not en-
titled to be subrogated to the rights of Patton as to any
claim for the $1,000 paid by the latter to Brown, and that
the district court erred in allowing that amount as an off-
set against the sum of $1,236, found due them on account
of rents and for waste by the defendant. By reference to
the finding, set out above, it appears that plaintiffs re-
quested and induced Patton to purchase the premises from
Brown and to pay the $1,000 for their benefit and by their
direction. It is further found that Patton conveyed said
property to the defendant "with all his right, title, inter-
est, and claim that he held against George Betts and Eliza
Betts, as to the lands above described," etc. The facts as
found amount to an assignment by Patton of whatever
cause of action he may have had against plaintiffs, and
which is available to the defendant in this action.

The next and only remaining question is that of the lia-

bility of plaintiffs to Patton for the $1,000 paid to Brown as part consideration for the property. By reference to the tenth finding, accompanying the original decree, it will be observed that plaintiffs were beneficially interested in the purchase of the land by Patton, that they were desirous of securing a part of the premises, but not having the necessary money, induced Patton to purchase it, agreeing to purchase a part of it from him at the price paid therefor to Brown. Construing the several findings together, it is apparent that the $1,000 in question should in equity be treated as an advancement by Patton for plaintiffs and for their benefit, and for which they should account in this action. It is not contended that this claim could be made a lien upon the property, nor is there a prayer for judgment for the excess remaining in defendant's favor after allowing plaintiffs credit for the amount found in their favor. The claim for rents of the property and for waste committed thereon does not partake of the character of the homestead, and is not shown to be exempt on other grounds. The decree is right and is

AFFIRMED.

MAXWELL, CH. J., concurs.

NORVAL, J., not sitting.