## WACHSTETTER ET AL v. JOHNSON ET AL.

[No. 8,536. Filed April 22, 1915. Rehearing denied December 17, 1915. Transfer denied April 27, 1916.]

1. HUSBAND AND WIFE.—*Rights of Wife in Estate of Deceased Husband.—Statutory Provisions.*—The rights of a wife in the lands of her deceased husband are to be determined by the statutory provisions relating thereto, since tenancy by dower is abolished, and under §3014 Burns 1914, §2483 R. S. 1881, providing that one-third of the real estate of which the husband dies seized shall descend to the widow in fee simple, etc., she takes such interest in the lands he died seized of as an heir, while under §3029 Burns 1914, §2491 R. S. 1881, providing that a widow, except as excepted in the section above referred to, is entitled to one-third of all the real estate of which the husband may have been seized in fee simple at any time during the marriage and in the conveyance of which she may not have joined, and also of all lands in which her husband had an equitable interest at the time of his death, etc., she takes by virtue of her marital rights. p. 665.

2. HUSBAND AND WIFE.—*Rights of Wife in Estate of Deceased Husband.—Nature of Interest.*—A married woman is regarded as a purchaser for a valuable consideration of all the property which accrues to her by virtue of her marriage. p. 666.

3. HUSBAND AND WIFE.—*Inchoate Interest of Wife.—Judicial Sale.—Statutes.*—Section 3052 Burns 1914, §2494 R. S. 1881, providing that where the inchoate interest of a married woman is not directed to be sold by the judgment or barred by virtue of the sale, it becomes absolute and vests in the wife in the same manner and to the same extent as upon the death of the husband, does not apply to sales of real estate upon judgments rendered prior to the taking effect of same, and prior to such statute a judicial sale vested the whole title in the purchaser subject to the inchoate right of the wife in one-third of the land sold in the event she survived her husband. p. 666.

4. HUSBAND AND WIFE.—*Rights of Wife in Estate of Deceased Husband.—Statutes.—Construction.*—The statutory enactment in lieu of dower is liberally construed in favor of the widow and is regarded as analagous to dower. p. 668.

5. HUSBAND AND WIFE.—*Inchoate Interest of Wife.—Foreclosure Sale.*—Where a husband acquired property subject to a judgment foreclosing a mortgage lien which he agreed to pay as a part of the purchase price, and the property was thereafter sold to satisfy such mortgage, the wife, by virtue of her marital rights, could redeem her one-third interest after the death of her husband, she not being a party to the foreclosure proceeding. p. 668.

6. HUSBAND AND WIFE.—*Inchoate Interest of Wife.—Acts of Husband.*—When a husband becomes seized of the title to lands in

fee simple, the interest of his wife attaches as an incident to his seizing, and no act or conveyance by the husband without her joining therein in some manner can sever, divest or extinguish her interests.   p. 670.

7.   HUSBAND AND WIFE.—*Inchoate Interest.*—*Bona Fide Purchaser.*— In view of the provisions of §3037 Burns 1914, §2499 R. S. 1881, that no act or conveyance, performed or executed by the husband without the assent of his wife evidenced by her acknowledgment thereof in the manner required by law, etc., shall extinguish her rights, the fact that a grantee paid a full and fair consideration and that he believed his grantor to be a single man, would not prevent the inchoate interest of grantor's wife from ripening on the death of her husband.   p. 672.

8.   MORTGAGES.—*Foreclosure.*—*Deed.*—*Relation.*—Where there is a sale on a decree of foreclosure of a mortgage the deed to the purchaser relates back to the execution of the mortgage.   p. 674.

9.   HUSBAND AND WIFE.—*Inchoate Interest.*—*Judicial Sale.*—Where it appeared that grantee at the time of purchasing at a judicial sale and taking a sheriff's deed, already had on record a warranty deed to the realty in question from one who was at the time of its execution the owner in fee simple, and that the judgment lien upon which the sale was had, as well as all other liens, were to be paid by grantee as a part of the purchase price, the complete legal title was already in grantee at the time of the judicial sale and the title acquired at such sale merged into it, so that the inchoate interest of grantor's wife, who had not joined in the execution of the warranty deed, was not barred by such judicial sale, notwithstanding the lien for which the property was sold was in existence when grantor acquired his title, and upon the death of grantor such inchoate interest ripened into an estate subject to incumbrances that were paramount to it when grantor took title.   p. 674.

10.   APPEAL.—*Review.*—*Evidence.*—*Findings.*—Where the evidence showed that six lot owners who were tenants in common of a strip back of their lots deeded their interests to each other, in severalty so that each became the owner of the strip adjoining such lot, the interest of appellees, based upon the inchoate right of their mother, widow of the former owner of such strip who conveyed without his wife joining, amounted to an undivided one-third part in value of the undivided one-sixth of that portion of the strip adjoining the particular lot involved, so that a finding that the appellees were the owners of an undivided one-third interest was erroneous.   p. 676.

11.   APPEAL.—*Review.*—*Harmless Error.*—*Admission of Evidence.*— There was no error in the admission of certain parol evidence, where it appears that such evidence was covered by documentary evidence admitted without objection.   p. 677.

12.   EVIDENCE.—*Parol Evidence.*—*Consideration for Deed.*—Where parol evidence admitted over the objection of appellants went

no further than to explain the consideration for the conveyance involved, there was no error in admitting the same.　p. 678.

13. HUSBAND AND WIFE.—*Inchoate Interest of Wife.—Redemption.—Payment of Mortgage.—Subrogation.*—Where a grantee, under a conveyance from a married man in which the wife did not join, paid a mortgage lien existing when grantor acquired the property, a conclusion of law, in an action by the children of grantor against the heirs of grantee to redeem their mother's inchoate interest, that grantee's heirs are entitled to be subrogated to the amount paid by grantee on the mortgage lien together with interest at six per cent from date of grantor's death, etc., was not erroneous. p. 678.

From Marion Circuit Court (17,476); *Charles Remster*, Judge.

Action by Thomas E. Johnson and others against Emeline D. Wachstetter and others. From the judgment rendered, the defendants appeal. *Reversed in part and affirmed in part.*

*Ferdinand Winter* and *Kealing & Hugg*, for appellants.

*Gavin & Gavin*, for appellees.

MORAN, J.—On November 18, 1905, Jacob Wachstetter departed this life, testate, at Marion County, Indiana. By his will he bequeathed and devised all of his property to appellants; and by reason thereof they claim to be the owners in fee simple of certain real estate in the city of Indianapolis, basing their title on a warranty deed executed by the father of appellees and a sheriff's deed executed by the sheriff of Marion County to one John A. Heidlinger, a grantor of Jacob Wachstetter. Appellees claim to be the owners in fee simple of an undivided one-third part in value of said real estate, asserting title through their mother, on the theory that their father was a remote grantor of Jacob Wachstetter to the real estate in question, and that their mother died subsequent to their father, and never joined in the deed of con-

veyance nor parted with her inchoate interest therein. The complaint is in two paragraphs; the first seeks to quiet title to an undivided one-third part of the real estate in question and for partition, alleging that the real estate is not susceptible of division, and should be sold and the proceeds distributed among the parties according to their interests. By the second paragraph of complaint, appellees seek to redeem an undivided one-third part of the real estate from a lien based on a decree of foreclosure of a purchase-money mortgage; that the amount of the lien be declared and the amount, if any, be fixed that appellees should pay; the lien be adjudged primarily against the undivided two-thirds interest in the real estate, and after exhaustion to be a lien on the undivided one-third part as owned by appellees; the sheriff's sale to be declared ineffectual to carry title; to have the court adjudge within what time appellees may pay whatever amount should be paid by them; an accounting of the rents and profits to be had; and that the real estate be sold and the proceeds be distributed according to the interests of the parties. Appellants filed a cross-complaint against appellees, alleging the ownership of all the real estate in question and asking that their title be quieted. Appellants answered both paragraphs of complaint by a general denial, and addressed a second paragraph of answer to the second paragraph of complaint, alleging that appellees' cause of action did not accrue within fifteen years before the bringing of the same. Appellees replied in general denial to the second paragraph of answer, and for a second paragraph of reply, alleged that their mother, Margaret E. Johnson, was from 1860 to November, 1907, a person of unsound mind. Appellees filed an an-

swer in general denial to appellants' cross-complaint. The cause was tried by the court, and the facts specially found and conclusions of law stated thereon in favor of appellees. Exceptions were reserved by appellants to the conclusions of law, and to the overruling of the motion for a new trial. Judgment was rendered on the conclusions of law. The errors assigned are: (1) Overruling of appellants' motion for a new trial; (2) the error of the court in stating its conclusions of law, Nos. 1 to 12, on the facts specially found.

We proceed first to dispose of the questions arising on the conclusions of law, and in doing so the principal questions presented by the motion for a new trial will be disposed of. A condensed statement of the uncontroverted facts, as gleaned from the special finding of facts, covering some sixty-six pages of the record, is: On May 25, 1835, Oliver H. Smith became the owner of lots 5 and 6 in block 52 in the city of Indianapolis, and by mesne conveyances, Isaac E. Johnson, a married man, and father of appellees, became the owner in 1862, of a part and parcel of lots 5 and 6; the title to which is now in controversy. A part of the same he obtained by deed from Esther Stanley and a part by deed from William J. Larue; both tracts of which were incumbered at the time, and which incumbrances he agreed to pay as a part of the purchase money; and to further indemnify Larue, he executed to him an indemnifying mortgage on both tracts of real estate, his wife not joining therein. Soon afterwards, and before he had discharged the incumbrances, Johnson sold the property in question and other property to John A. Heidlinger, for $16,500, and agreed to convey the same by a warranty deed. Heidlinger did not know at this time that Johnson was

a married man, nor did he know that the real estate was encumbered. At the time he made the purchase, he paid Johnson $200, in cash. An examinaation of the records disclosed incumbrances on the property, consisting of mortgages and judgment liens. A mortgage executed by Stephen M. Norris to Obediah Harris had been foreclosed prior to the purchase by Johnson, but no sale had. After obtaining the information as to the liens, it was agreed between Heidlinger and Johnson that Heidlinger should obtain a sheriff's deed upon a decree of foreclosure of the mortgage covering the real estate in question, in addition to taking a deed of conveyance from Johnson, in order to obtain a clear title; and out of the purchase price all incumbrances should be satisfied, and the balance of the purchase price paid to Johnson, which was done. On May 9, 1864, Johnson conveyed by warranty deed to Heidlinger, and the sale of the real estate by the sheriff took place on May 28, 1864 and on the same day a sheriff's deed was executed to Heidlinger in consideration of the amount of his bid, which was $50, he being the only bidder therefor. Margaret E. Johnson, mother of the appellees, was a person of unsound mind from 1860 to the date of her death in 1907, having been judicially declared of unsound mind March 22, 1883, in the Owen Circuit Court. Margaret E. Johnson did not join in the deed with her husband to Heidlinger, nor was she a party to the foreclosure proceedings, nor a party to the creation of any of the liens against the real estate in question. Heidlinger conveyed the real estate in question to Jacob Wachstetter, on February 23, 1865, who went into possession immediately thereafter, and his possession and title was undisturbed until June 1, 1883, when

the guardian of Margaret E. Johnson asserted her claim of right to an undivided one-third part of the real estate. Jacob Wachstetter had no actual knowledge that Isaac E. Johnson was a married man at the time he took the deed of conveyance from John A. Heidlinger. Isaac E. Johnson departed this life January 13, 1883, intestate, and Jacob Wachstetter died November 18, 1905, testate. Appellees are the children of Isaac E. Johnson and Margaret E. Johnson. Appellants are the legatees and devisees of Jacob Wachstetter.

On May 6, 1853, tenancy by dower was abolished by statute, and thereafter the rights of the widow in the lands of her husband were determined by statute. In this cause our investigation includes but two sections of the enactment in lieu of or a substitute for dower, viz., 1. §§17, 27. §§3014, 3029 Burns 1914, §§2483, 2491 R. S. 1881. The first section referred to provides: "If a husband die testate or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors: *Provided, however,* that where the real estate exceeds in value ten thousand dollars, the widow shall have one-fourth only, and where the real estate exceeds twenty thousand dollars, one-fifth only, as against creditors." The latter section reads as follows: "A surviving wife is entitled, except as in section seventeen excepted, to one-third of all the real estate of which her husband may have been seized in fee simple, at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law, and also of all lands in which her husband had an equitable interest at the time of his death: *Provided,* That if the husband shall have left a will, the wife may elect to take under the will instead

of this or the foregoing provisions." It will be noticed that the former section refers to lands, which the husband died siezed of; while the latter section refers to lands of which he was seized during the marriage, but which were conveyed without the wife joining therein as the law provides. Under §17, *supra*, it has been held that the widow takes as an heir, while under §27, *supra*, she takes by reason of her marital rights. *Haggerty* v. *Wagner* (1897), 148 Ind. 625, 48 N. E. 366, 39 L. R. A. 384; *May* v. *Fletcher* (1872), 40 Ind. 575; *Bowen* v. *Preston* (1874), 48 Ind. 367; *Fry* v. *Hare* (1906), 166 Ind. 415, 77 N. E. 803; *Graves* v. *Fligor* (1895), 140 Ind. 25, 38 N. E. 853; *McKinney* v. *Smith* (1886), 106 Ind. 404, 7 N. E. 3. And further, a married woman is regarded as a purchaser for a valuable consideration of all the property,

2. which accrues to her by virtue of her marriage. *Staser* v. *Garr, Scott & Co.* (1907), 168 Ind. 131, 79 N. E. 404; *Richardson* v. *Schultz* (1884), 98 Ind. 429; *Derry* v. *Derry* (1881), 74 Ind. 560; *Green* v. *Estabrook* (1907), 168 Ind. 123, 79 N. E. 373, 120 Am. St. 349.

By the act of 1875 (§3052 Burns 1914, §2494 R. S. 1881), where the inchoate interest of a married woman is not directed to be sold by the

3. judgment or barred by virtue of such sale, it becomes absolute and vests in the wife in the same manner and to the same extent as upon the death of her husband. The provisions of this act do not apply to sales of real estate upon judgments rendered prior to the taking effect of the same. It has been held that this act neither enlarged nor abridged the inchoate interest of a married woman in the lands of her husband. *Baker* v. *McCune* (1882), 82 Ind. 339. Prior to the taking effect of the act of 1875, *supra*, the

title to a debtor's real estate, sold at judicial sale, vested in the purchaser the whole title, subject, however, to the inchoate right of the wife in one-third thereof in the event she survives her husband. *Taylor* v. *Stockwell* (1879), 66 Ind. 505; *Elliott* v. *Cale* (1888), 113 Ind. 383, 14 N. E. 708, 16 N. E. 390; *Geisendorff* v. *Cobbs* (1911), 47 Ind. App. 573, 94 N. E. 236. We must therefore, look to the law in force at the time of the sale, and during the time Isaac E. Johnson held the title to the real estate in question and the construction it has received by our courts of last resort in order to ascertain the relative rights of the parties to this cause.

The facts above disclose that Margaret E. Johnson, the mother of appellees, did not join in the deed of conveyance executed by their father to John A. Heidlinger to the real estate in question. It can without hesitancy be said that if her rights as a married woman attached to the real estate during the time her husband held the record title thereto, they were unaffected by the warranty deed executed by Isaac E. Johnson to John A. Heidlinger. It will be noted that, in addition to obtaining a conveyance by warranty deed from Isaac E. Johnson, John A. Heidlinger likewise obtained a sheriff's deed based upon a decree of foreclosure of a mortgage, which antedated the deed of conveyance from Isaac E. Johnson's grantor to him, and which Isaac E. Johnson had agreed to pay as a part of the purchase money, when he took the deed of conveyance. The pivotal question is, What rights did John A. Heidlinger acquire under the sheriff's deed? When a conclusion has been reached upon this question, the burden of our labor will have been finished, as the other ques-

tions raised are but incidental thereto. As a preface to our views upon this proposition, it has been held that the statutory enactment in lieu of or as a substitute for dower has been liberally construed in favor of the widow; it has been treated by the courts as analagous to dower, and has received, in a measure, the same construction. The liberality with which dower was looked upon under the common law, is best expressed by the quaint and terse language of Lord Coke, "There are three things highly favored in the law, life, liberty and dower." *Mansur* v. *Hinkson* (1884), 94 Ind. 395; *Noel* v. *Ewing* (1857), 9 Ind. 37; *Kennedy* v. *Nedrow* (1789), 1 Dall. 415, 1 L. Ed. 202; *Haggerty* v. *Wagner*, *supra; Thompson* v. *McCorkle* (1894), 136 Ind. 484, 34 N. E. 813, 36 N. E. 211, 43 Am. St. 334.

It is earnestly contended by appellants that the sheriff's deed, executed May 28, 1864, by the sheriff of Marion County to John A. Heidlinger, resting upon a decree of foreclosure, antedating the acquiring of title by Isaac E. Johnson, carried the absolute title to the real estate in question to John A. Heidlinger, and that the appellants hold the same title that John A. Heidlinger acquired. On the other hand appellees insist that the sheriff's deed, under the circumstances surrounding its execution, did not carry the inchoate interest of Margaret E. Johnson, and that upon the death of her husband, her inchoate interest ripened into an estate in the undivided one-third part in value of the real estate in question, which gave her the right of redemption. Isaac E. Johnson obtained the title to the two tracts of real estate as aforesaid, one known as the Larue tract, and the other as the Stanley tract which is involved in this case. The Larue

tract finally passed into the hands of one Maus, and while held by him, Inman H. Fowler, guardian of Margaret E. Johnson, brought an action, after the death of Isaac E. Johnson for partition and accounting as against Maus, similar in many respects to the case at bar. This cause reached the Supreme Court in *Fowler* v. *Maus* (1895), 141 Ind. 47, 40 N. E. 56, and it was there held that "Maus, as the remote grantee of Heidlinger, was entitled to be subrogated to the mortgage upon said real estate executed by Johnson to Larue, so far as it secured the Hobbs mortgage and the Ellis, McAlpin & Co. judgment, as well as to said Hobbs' mortgage and said judgment, to the extent of the money paid thereon by Heidlinger, with interest from January 16, 1883, less rents exclusive of improvements; that said real estate be sold and that the costs of this action be first paid out of the proceeds of sale, and then a certain proportion of the remainder be paid to appellee Maus on account of improvements made on said real estate, after the same was sold by Johnson; and that two-thirds of the remainder be paid to said Maus and operate as a credit to appellant upon the amount due Maus on the mortgage and judgments aforesaid, the remaining one-third, after paying the said Maus any balance which may remain unpaid of the amount due him on said mortgage and judgments, be paid to the appellant." It will be observed that in the case of *Fowler* v. *Maus*, *supra*, the judgment upon which the sale was had of the real estate in question was rendered after Isaac E. Johnson became the owner, but upon a lien against the real estate, which antedated the conveyance from Larue to him. While in the case at bar, the sale was had upon a lien that was reduced to judgment before the conveyance from

Stanley to him, but sold after he became the owner. Without deciding whether the diversity of the facts in the particular above related, distinguishes the case at bar from *Fowler* v. *Maus, supra,* there is one proposition that this case did decide, and that is from a sale upon an incumbrance, which Isaac E. Johnson agreed to pay, as a part of the purchase price, she was entitled to redeem, where she was not made a party to the suit, upon which the judgment was rendered. And so in this case, when Isaac E. Johnson took the title to the real estate here involved, he agreed to discharge the liens against the same as a part of the purchase price, and the sheriff's deed was based upon the decree of foreclosure, which he agreed to pay, and his wife was entitled to redeem from the sale after the death of her husband unless by reason of the fact that the sale was had upon the decree of foreclosure rendered before her husband purchased the real estate. It may be stated as a general proposition of law that the wife, by reason of her marital rights, may redeem from a sale of real estate had during the lifetime of her husband for purchase money, after the death of her husband, where she was not a party to the foreclosure proceedings. *Barr* v. *Vanalstine* (1889), 120 Ind. 590, 22 N. E. 965; *May* v. *Fletcher, supra; Warner* v. *Vanalstyne* (1832), 3 Paige 513; *Brenner* v. *Quick* (1883), 88 Ind. 546; *Frain* v. *Burgett* (1898), 152 Ind. 55, 50 N. E. 873, 52 N. E. 395; *Darby* v. *Vinnedge* (1913), 53 Ind. App. 525, 100 N. E. 862. After Isaac E. Johnson became seized in fee simple of the real estate in question by reason of the conveyance to him by Stanley, the interest of his wife attached as an incident to the seisin of the husband during marriage, and no act or conveyance by the husband without her join-

ing therein in some manner could sever, divest or extinguish her interests. *Crissom* v. *Moore* (1886), 106 Ind. 296, 6 N. E. 629, 55 Am. Rep. 742; *Frain* v. *Burgett, supra;* Tiedeman, Real Prop. §121; *Stroup* v. *Stroup* (1895), 140 Ind. 179, 39 N. E. 864, 27 L. R. A. 523; *May* v. *Fletcher, supra*. On May 9, 1864, Isaac E. Johnson executed to John A. Heidlinger, as aforesaid, a warranty deed, which he placed of record in the recorder's office of Marion County, Indiana, on May 13, 1864; and upon obtaining the warranty deed, he immediately went into possession of the real estate in question. On May 28, 1864, the same real estate described in the warranty deed was sold by the sheriff of Marion County, upon the decree of foreclosure heretofore mentioned, to John A. Heidlinger, who as above disclosed, already held the title by a warranty deed. He obtained the sheriff's deed for the real estate upon the date of the sale. Before the execution of the warranty deed and the deed by the sheriff, it was arranged between Isaac E. Johnson and John A. Heidlinger, that John A. Heidlinger was to take the conveyance by warranty deed from Isaac E. Johnson, and a sheriff's deed upon the decree of foreclosure for the purpose of clearing the title. The consideration mentioned in the warranty deed was $16,500; the deed, however, included other real estate than here involved. The consideration for the execution of the sheriff's deed was $50. The amount paid to discharge the liens on the real estate, together with the amount paid Isaac E. Johnson, and the consideration for the sheriff's deed was the fair value of the real estate at the time. It is strenuously insisted by appellants that John A. Heidlinger had a right to enter into an agreement with his grantor whereby the real estate should be sold upon the

judgment liens by the sheriff in order to clear the title. However, there is no infirmity disclosed in the title, except the liens that were standing against the real estate at the time, and which were liquidated, and the amounts thereafter paid. Now, does this prearrangement to have the real estate sold by the sheriff, and which was finally carried out, add anything to the title John A. Heidlinger had by reason of the warranty deed he held prior to the sale by the sheriff? As far as the liens are concerned, they were not paid by reason of the sale by the sheriff, except to the extent of $50, and from aught that the record discloses this $50 in consideration for the sale and conveyance by the sheriff may have been applied to the costs of the action. So the liens were practically, if not entirely, paid by John A. Heidlinger personally. The record discloses no claim or outstanding title of any kind, as against the real estate in question, that could have been barred by reason of the sale by the sheriff. So the conveyance by the sheriff could serve no purpose in the light of the facts other than to extinguish Margaret E. Johnson's inchoate interest in the real estate in question.

It is admitted that Margaret E. Johnson was a person of unsound mind from 1860 to the date of her death in 1907, and there is no pretense 7. that any one was misled by her conduct, which eliminates any element of estoppel from this cause. The element of a good-faith purchaser pressed by appellants adds nothing to their position. The fact that John A. Heidlinger paid a full and fair consideration for the real estate in question, and that he believed his grantor to be a single man would not prevent the wife's inchoate interest from ripening upon the death of her husband. *Law* v. *Long* (1873), 41 Ind. 586;

14 Cyc 980; *Smith* v. *Fuller* (1908), 138 Iowa 91, 115 N. W. 912, 16 L. R. A. (N. S.) 98; *Mason* v. *Deirks Lumber, etc., Co.* (1910), 94 Ark. 107, 125 S. W. 656, 26 L. R. A. (N. S.) 574; *Hunt* v. *Reilly* (1902), 24 R. I. 68, 52 Atl. 681, 96 Am. St. 707, 59 L. R. A. 206; *Haller* v. *Hawkins* (1910), 245 Ill. 492, 92 N. E. 299; *McLanahan* v. *Griffin* (1897), 168 Ill. 31, 48 N. E. 315; *Hilton* v. *Sloan* (1910), 37 Utah 359, 108 Pac. 689; *Cazier* v. *Hinchey* (1898), 143 Mo. 203, 44 S. W. 1052; *Hall* v. *Marshall* (1905), 139 Mich. 123, 102 N. W. 658, 111 Am. St. 404; *Stevens.* v. *Wooderson* (1906), 38 Ind. App. 617, 78 N. E. 681. Section 3037 Burns 1914, §2499 R. S. 1881, provides "No act or conveyance, performed or executed by the husband without the assent of his wife, evidenced by her acknowledgment thereof in the manner required by law; nor any sale, disposition, transfer or incumbrance of the husband's property by virtue of any decree, execution or mortgage, to which she shall not be a party (except as provided otherwise by this act), shall prejudice or extinguish the right of the wife to her third of his lands or to her jointure, or preclude her from the recovery thereof, if otherwise entitled thereto." The supreme court of the State of Illinois under a statute similar to the above, said in *Haller* v. *Hawkins, supra,* "There is no evidence that the plaintiff in error knew of the false statements in the deed and certificate of acknowledgment that the grantor was unmarried, and neither such false statements nor any other fraud of her husband, not participated in by her, could prejudice her rights of dower." The same court in *McLanahan* v. *Griffin, supra,* held, "There was evidence that when petitioner's husband executed the deed he said

that he was a single man. The statement was false, and petitioner did not hear it made or know of it, so that it did not affect her right to dower by estoppel or otherwise."

Our attention has been called by appellants to the fact that the decree of foreclosure upon which the sale was had was a lien against the real estate before Margaret E. Johnson's husband purchased the same. We are not unmindful that where there is a sale on a decree of foreclosure of

8. a mortgage, that the deed relates back to the execution of the mortgage. *Bateman* v. *Miller* (1889), 118 Ind. 345, 21 N. E. 292;

9. *Jarrell* v. *Brubaker* (1898), 150 Ind. 260, 49 N. E. 1050; *Batterman* v. *Albright* (1890), 122 N. Y. 484, 25 N. E. 856, 19 Am. St. 510, 11 L. R. A. 800; *Van Buskirk* v. *Summitville Min. Co.* (1906), 38 Ind. App. 198, 78 N. E. 208. Does the sale so made by the sheriff on May 28, 1864, to John A. Heidlinger come within this doctrine? It must be kept in mind that John A. Heidlinger at the time he purchased the real estate in question and took a sheriff's deed therefor already had on record a warranty deed from Isaac E. Johnson, who was the owner in fee simple of the real estate at the time of the conveyance. It was his own land that was sold and bid in by John A. Heidlinger, and for which he took a sheriff's deed. The judgment lien, upon which the sale was had, together with all other liens upon the real estate were to be paid by John A. Heidlinger as a part of the purchase price for the real estate. "Where the complete legal title is already in the purchaser, another title obtained through a judicial sale would merge in the prior title, if it appears that the title formerly held and that acquired by the sale are held in the same right, with no intervening title in a

third person. If, however, the title so obtained was procured for the purpose of cutting off intervening title or incumbrances, and to reënforce a title then held, the subsequently acquired title will merge or be kept on foot, depending on the relation in which the purchaser, stood to the judgment or sale on which the title is predicated. If the purchaser was primarily liable to pay the incumbrances on account of which the sale was made, it would seem reasonably manifest that he could build up no additional title on his own default." *Birke* v. *Abbott* (1885), 103 Ind. 1, 1 N. E. 485, 53 Am. Rep. 474. See, also, *Bunch* v. *Grave* (1887), 111 Ind. 351, 12 N. E. 514; *Shanklin* v. *Franklin Life Ins. Co.* (1881), 77 Ind. 268; *Overturf* v. *Martin* (1908), 170 Ind. 308, 84 N. E. 531. In view of the liberality with which the law looks upon the inchoate interest of the wife, and in view of the facts in this cause, and in the light of the authorities, we have reached the conclusion that the sheriff's sale did not bar the wife's inchoate interest in the real estate in question, and upon the death of her husband, it ripened into an estate subject to the incumbrances that were paramount to it when her husband took the title from Esther Stanley, with the right to have the undivided two-thirds part first exhausted before resorting to her undivided one-third part thereof. The sheriff's deed to John A. Heidlinger, under the circumstances, gave him no additional title to that acquired by the warranty deed from Isaac E. Johnson. It was his duty to have paid the liens as a part of the purchase price, and he could not build up an additional title on his own default, so as to bar the wife's inchoate interest. She therefore had a right to redeem from this sale and to have her interest found as against the liens that

were superior to her title, and appellants are entitled to be subrogated to the mortgage and judgment of foreclosure, upon which the sale was had.

Appellants insist that the special finding of facts is not sustained by sufficient evidence and are contrary to law. The record discloses evidence sufficient to support each finding of the court, except as to the appellees being the owners, as tenants in common with appellants of an undivided one-third part in value of a certain tract of real estate designated throughout this litigation as the four-foot strip. Before Isaac E. Johnson became the owner of the real estate in question, a part of lot 5 in block 52 in the city of Indianapolis, being 102½ feet facing on Washington street, and bounded on the east by Senate avenue, was cut into six different parcels, upon which business rooms were to be erected, and the same extended back seventy feet. The tract at the corner of Senate avenue and Washington street was seventeen and one-half feet wide; each of the other five tracts was seventeen feet wide. To the rear of these six tracts, there was a narrow strip of ground, starting at Senate avenue, extending west 102½ feet and four feet wide, heretofore referred to as the four-foot strip. This was intended to be used in common by the owners of the tracts contiguous thereto, and when the main tracts were conveyed from time to time, an undivided one-sixth interest in this four-foot strip was intended to go with each tract. An attempt to trace the title of this narrow strip shows that many errors occurred in attempting to convey the same, and the record in this behalf abounds in confusion. However, there is enough to show that Isaac E. Johnson had at one time, while the owner of the real estate in question,

an undivided one-sixth interest in this four-foot strip. The necessity for this four-foot strip seems to have ceased many years after the conveyance by Isaac E. Johnson to John A. Heidlinger, and the same was severed by deeds of conveyance, so that each tract was made to include that part of the four-foot strip upon which it abutted. By reason of Isaac E. Johnson being the owner of an undivided one-sixth part of the four-foot strip, his wife's inchoate interest attached thereto, and the appellees are now the owners of an undivided one-third part in value of the one-sixth of that part of the four-foot strip subject to the same conditions as the main tract. The evidence discloses that appellees are the owners of an undivided one-third part in value and appellants the owners of an undivided two-thirds part in value of the following described real estate: Beginning seventeen and one-half feet west of the southeast corner of lot 6 in square 52 in the original plat of the city of Indianapolis, thence west along Washington street seventeen feet, thence north seventy feet, thence east seventeen feet, and thence south to the place of beginning; and the evidence discloses that appellees are the owners of an undivided one-third of one-sixth, and appellants the owners of the balance of the strip of ground four feet wide by seventeen feet long, lying immediately north of the tract above described. The evidence does not support the finding that appellees are the owners of an undivided one-third part in value of the tract of real estate last above described.

In the trial court the parties embodied certain facts in what they designated as stipulation No. 1 as to what John A. Heidlinger would testify if present and sworn as a witness, reserving the right to raise any ob-

jection they saw fit upon the trial to the competency of any part of the same. Certain paragraphs of this stipulation were put in evidence over the objection of appellants, which they insist are erroneous. The burden of appellants' objections to the admission in evidence of the various paragraphs of the stipulation goes to the parol agreement between Isaac E. Johnson and John A. Heidlinger, as to the procuring of a sheriff's deed and the paying of judgment liens out of the purchase money for the real estate in question. At the time this agreement was found to have been entered into, Isaac E. Johnson was a grantor in possession of the real estate in question, and the general tenor of the evidence in this connection relates to the consideration, which was to be paid by John A. Heidlinger for the real estate that he was then purchasing. Documentary evidence, unobjected to, discloses that within a short time after this agreement was supposed to have been entered into, a sheriff's sale was had and the property bid in by John A. Heidlinger for the nominal sum of $50, so there could be no error predicated upon that part of the parol testimony covered by documentary evidence unobjected to. Taking the evidence objected to as a whole, it went no further than to explain the consideration for the conveyance, in connection with the sale by the sheriff and the procuring of the deed as aforesaid, and there was no error in admitting the same.

Appellees have filed a cross assignment of error objecting to the court's conclusions of law which relate to the rents and profits of the real estate, on the theory that the conclusions of law, as stated in this particular, fail to give appellees the benefit of their share of the

rents and profits received by appellants subsequent to the time when the net amount of rents and profits had been sufficient to pay off and discharge the mortgage lien, to which appellants were entitled to be subrogated. The conclusions of law challenged by the cross assignment of error in substance holds that appellants are entitled to be subrogated to the amount paid by John A. Heidlinger on the mortgage lien, together with six per cent interest from the date of Isaac E. Johnson's death, in the sum of $6,347; and that this amount had been fully paid by the application thereto of the net rents received by the appellants and their ancestor between the time of the death of Isaac E. Johnson and the bringing of this action. The conclusions of law in this respect are in harmony with the holding in the case of *Fowler* v. *Maus, supra.* The court did not err in its conclusions of law in ascertaining the amount of the rents and profits chargeable to appellants.

For error of the court in holding that appellees are the owners of an undivided one-third part of the real estate heretofore described as a strip of ground four feet wide by seventeen feet long, lying immediately north of the main tract in question, judgment is reversed, with instructions to the court below to restate its conclusions of law in conformity herewith as to said parcel of ground. In all other things the judgment of the lower court is affirmed. All costs made in this court are adjudged against appellees, and all costs made in the lower court are adjudged against appellants.

Note.—Reported in 108 N. E. 624. As to when election by widow may be compelled, see 92 Am. St. 695. As to the right of dower in an equity of redemption, see 12 Ann. Cas. 481; Ann. Cas. 1913 B 1310.